IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARTHA FORD                                                                             PLAINTIFF

v.                                        CIVIL NO. 09-5081

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Martha Ford, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on September 21, 2006, alleging an inability to work since January 1, 2005, due to a thyroid problem, heart problems, vision problems and high blood pressure. (Tr. 84-86, 105). An administrative hearing was held on May 29, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 8-36).

By written decision dated October 29, 2008, the ALJ found that during the relevant time period Plaintiff had an impairment or combination of impairments that were severe. (Tr.46).

Specifically, the ALJ found Plaintiff had the following severe impairments: hypertension and impaired vision resulting from a thyroid condition. (Tr. 46). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 46). The ALJ found Plaintiff retained the residual functional capacity (RFC) to lift and/or carry ten pounds frequently, twenty pounds occasionally; to push and/or pull within the limits for lifting and carrying; to sit (with normal breaks) for a total of six hours in an eight-hour work day; to stand and/or walk (with normal breaks) for a total of six hours in an eight-hour work day; and to frequently grasp and finger. (Tr. 47). The ALJ further found Plaintiff's vision was impaired to the extent that she could not do work requiring excellent vision such as repetitive reading of a newspaper or book size print but could see well enough to avoid the normal safety hazards of the work place. The ALJ also found Plaintiff could not perform work that required being exposed to hazards such as unprotected heights and moving machinery. With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a fast food worker, a convenience store clerk and a hotel/motel housekeeper. (Tr. 51).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 26, 2009. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 9,11).

**II.    Evidence Presented:**

At the administrative hearing held before the ALJ on May 29, 2008, Plaintiff testified that she was fifty-one years of age and that she had earned her GED. (Tr. 10-11). When Plaintiff

applied for disability she alleged she was limited due to thyroid problems, heart problems, vision problems and high blood pressure. (Tr. 11). The record reflects Plaintiff's past relevant work consists of work as a hospital housekeeper and a bookkeeper. (Tr. 50, 106).

The pertinent medical evidence in this case reflects the following. Plaintiff sought treatment in October of 2005 and was diagnosed with SVT (supraventricular tachycardia).[1] (Tr.167-168).

On May 10, 2006, Plaintiff denied allergy problems or shortness of breath. (Tr. 166). Dr. C. Joseph Chouteau, of Family Care Specialists, Inc., noted Plaintiff was positive for palpitations if she took her thyroid medication daily. Plaintiff was to undergo blood work the next morning and to return for a PAP test in two weeks.

On May 17, 2006, Plaintiff went in for her lab results. (Tr. 165, 192). Plaintiff reported she had been taking her thyroid medication every other day for the past three weeks because it had caused her to have an elevated heart rate. Ms. Karen Schnell, Mn., A.R.N.P., of Family Care Specialists, Inc., noted Plaintiff had been diagnosed with hyperthyroidism in the past with treatment with irradiation and that Plaintiff reported she experienced a fast heart rate with the Levothyroid. Plaintiff reported she would be okay for a while but then would have episodes of increased heart rate. Plaintiff reported her fast heart rate started last Fall. Plaintiff was diagnosed with hypothyroidism, increased lipidemia and SVT. Plaintiff was to take her Levothyroid every day and to monitor for palpitations, to continue taking Atenolol, and to increase her Lipitor dosage. Plaintiff did not keep her June 7, 2006 appointment. (Tr.165).

---

[1] The court notes these medical records are difficult to read.

On November 21, 2006, Plaintiff underwent a consultative General Physical Examination performed by Dr. Garrett. (Tr. 182-188). Dr. Garrett noted Plaintiff's report that her heart raced until she took medicine to slow it down; that her TSH was low but her heart acted like it was too high; that Plaintiff saw double; and that she had hypertension. (Tr. 182). Plaintiff's medications consisted of Atenolol and Levothyroid. Dr. Garrett noted Plaintiff had normal vision. Dr. Garrett noted Plaintiff had normal range of motion in her spine and extremities. Dr. Garrett noted Plaintiff did not have muscle weakness or atrophy and that her gait and coordination were "okay." Upon a limb function evaluation, Dr. Garrett reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip ninety percent of normal; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; and to walk on heel and toes. Dr. Garrett opined Plaintiff had no ability to squat and arise from a squatting position. Plaintiff was diagnosed with hypothyroid (by history) and hypertension. Based on his evaluation of Plaintiff, Dr. Garrett opined Plaintiff had difficulty seeing (by history).

On January 10, 2007, Plaintiff was seen by Dr. Chouteau for a follow up and to get her lab results. (Tr. 193). Dr. Chouteau noted Plaintiff had no chest pain, shortness of breath or abdominal trouble. Plaintiff was noted as positive for arthralgia in her knees. Plaintiff was diagnosed with hypertension, hypothyroid and increased cholesterol. Plaintiff was to return in four weeks.

On February 15, 2007, Plaintiff returned to Family Care Specialists, Inc., for a follow up. (Tr. 195). Plaintiff reported at home her average blood pressure had been 146/98. Plaintiff reported she took Bactrium for six days and then broke out in a rash. Nurse Schnell noted Plaintiff was exophtalmos bilaterally. Nurse Schnell diagnosed Plaintiff with hypertension and

AO72A
(Rev. 8/82)

hypothyroidism. Plaintiff was to increase her Diovan and to continue monitoring her blood pressure. Plaintiff was to return for a recheck in four weeks.

On March 15, 2007, Plaintiff reported she had been checking her blood pressure twice a day and that the medication was "working good." (Tr. 196). Plaintiff reported she was still losing weight. Plaintiff was diagnosed with hypertension, increased lipidemia and hypothyroidism. Plaintiff was to continue with her medication and to return for a follow up in four weeks.

On April 16, 2007, Plaintiff reported that except for her general aches and pains she felt fine. (Tr. 197). Plaintiff was diagnosed with increased lipidemia and hypertension. Dr. Chouteau recommended some changes in Plaintiff's medications and that she continue with a low fat, low sodium diet.

On May 2, 2007, Dr. Ronald Crow, a non-examining medical consultant, reviewed the record and opined the following:

> 50 y/o alleging hypertension, hypothroidism, vision and heart problems. She is seen regularly for hypertension and hypothroidism which appear to be well controlled on medication. No vision impairment or limitations revealed. 11/06 CE reports VA 20/20 with normal vision fields. 5/06 MER reported episode of increasing heart rate and given diagnosis of SVT during this time frame she also admitted to being noncompliant to throid replacement therapy. No other heart problems reported in MER. MER fails to reveal a severe physical impairment. Assessment of 11/22/2006 is affirmed.

(Tr. 206, 190).

On May 16, 2007, Plaintiff reported she was not sleeping well. (Tr. 215). Plaintiff indicated she had not slept well for a long time and was experiencing hot flashes. Plaintiff also reported that her legs and arms would go numb depending on her position and that she

experienced some low back pain with lifting. Upon examination, Dr. Chouteau noted Plaintiff was moderately obese and that her spine/back was "nontender." Dr. Chouteau diagnosed Plaintiff with hypertension, insomnia, osteoarthritis of the lumbar spine and vasomotor symptoms. Plaintiff refused muscle relaxers. Plaintiff was started on Trazadone to help her sleep and was to continue all of her other medications. Plaintiff was to return for a follow up in July.

On May 18, 2007, Plaintiff complained that her heart was racing. (Tr. 213). Dr. Chouteau noted Plaintiff was positive for smoking. Dr. Chouteau diagnosed Plaintiff with SVT with symptoms. Progress noted indicated Plaintiff did not keep her June 4, 2007, appointment.

On November 6, 2007, Plaintiff was examined by Dr. Lorry W. Lazenby, an optometrist, and diagnosed with ocular hypertension. (Tr. 209). Plaintiff was given a prescription for corrective lenses.

On December 5, 2007, Dr. Chouteau noted Plaintiff felt okay and denied chest pain. (Tr. 211). Plaintiff reported some allergy problems. Plaintiff continued to smoke. Plaintiff was diagnosed with hypertension, hypothyroidism, allergic rhinitis and hyperlipidemia.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only

AO72A
(Rev. 8/82)

if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

## IV. Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled during the relevant time period of January 1, 2005, through October 29, 2008.

### A. Subjective Complaints and Credibility Analysis:

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

We believe the ALJ adequately evaluated the factors set forth in Polaski, 739 F.2d at 1322, and conclude there is substantial evidence supporting the ALJ's determination that Plaintiff's complaints were not fully credible.

With regard to Plaintiff's hypertension, SVT and hypothroidism, the medical evidence of record supports the ALJ's finding that when Plaintiff took her medication and followed her treatment plan as prescribed, these impairments were controlled by medication. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009), quoting from Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Regarding Plaintiff's vision impairment, the record reflects Plaintiff infrequently reported vision problems to her treating physicians. Furthermore, in November of 2006, Dr. Garrett noted Plaintiff had normal corrected vision. In November of 2007, Dr. Lazenby diagnosed Plaintiff with ocular hypertension but did not indicate that Plaintiff had any visual limitations not addressed with the use of corrective lenses. The ALJ noted the above medical evidence and included limitations of Plaintiff's inability to repetitively read newspaper or book size print in the RFC determination. Plaintiff also testified that being in direct sun light or brightly lit rooms also caused pain; however, the record does not show Plaintiff reported this problem to her treating physicians. Based on the record as a whole, we find substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling visual impairment.

Regarding Plaintiff's alleged knee and back pain, the record fails to show Plaintiff sought ongoing and consistent treatment for her knee and back pain. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (ALJ may consider claimant's failure to take prescription medication and seek ongoing treatment to be inconsistent with complaints); Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment is inconsistent with allegations of pain). Dr. Garrett also noted Plaintiff had full range of motion in her spine and extremities on

November 21, 2006. On May 16, 2007, Dr. Chouteau did diagnose Plaintiff with osteoarthritis of the lumber spine; however, upon his examination of Plaintiff on this date he found Plaintiff's back/spine to be "nontender." Furthermore, Dr. Chouteau did not include the diagnosis of osteoarthritis when he saw Plaintiff on May 18, 2007, or December 5, 2007.

The complete evidence of record concerning Plaintiff's daily activities is also inconsistent with her claim of disability. At the administrative hearing on May 29, 2008, Plaintiff testified her primary work was just to try to take care of the home. (Tr. 15). The record reflects Plaintiff, with some help from her daughter, was able to take care of her cats, to take care of her basic personal needs, to prepare simple meals, to drive a car, to shop for errands and groceries, to handle money, to go out to eat and to talk to friends. This level of activity belies Plaintiff's complaints of limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disability. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

AO72A
(Rev. 8/82)

**B.     RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform light work with some limitations.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

### C. Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. Plaintiff argues that the jobs the vocational expert found Plaintiff was able to perform was contradictory to Plaintiff's assigned RFC.

After reviewing the ALJ's proposed hypothetical, the vocational expert testified that the hypothetical individual would be able to perform work as a fast food worker, a convenience store worker and a motel/hotel housekeeper.[2] While the fast food worker and convenience store clerk do have some near acuity requirements listed in the Dictionary of Occupational Titles, the job as a motel/housekeeper clearly does not. Regarding the motel/hotel housekeeper job, the vocational expert testified there were 864,000 jobs in the national economy and 7,900 jobs in Arkansas.

We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled as she is able to perform other work in the national and local economies. See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

---

[2] The Dictionary of Occupational Titles number assigned to these jobs are 311.472-010, 211.462-010, and 323.687-014, respectively. *See* DICOT §§ 311.472-010, 211.462-010, and 323.687-014 *at* www.westlaw.com. The job as a fast food worker requires frequent near acuity, occasional color vision, and no far acuity, depth perception, or field of vision; the job as a convenience store worker requires frequent near acuity but no far acuity, depth perception, color vision or field of vision; and the job as a motel/hotel housekeeper requires no near acuity, far acuity, depth perception, color vision or field of vision. Id.

## V.     Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 31st day of March 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**